## Board of Regents of the Murray State Normal School v. A. E. Cole, Doing Business Under the Name of Jack Cole.

(Decided June 19, 1925.)

### Appeal from Calloway Circuit Court

Schools and School Districts—Mistake of Successful Bidder in Computation of Estimates Held Fundamental.—Where, in preparation of lump sum bid for construction of normal school building, plaintiff, by mistake and without culpable negligence, omitted item of $22,000 for cut stone, his mistake was not incidental but fundamental, and a substantial part of whole consideration of contract, warranting cancellation of contract and return of check deposited with bid, on payment by him of cost of reletting contract, which was only damage sustained by board.

G. P. THOMAS for appellant.

J. D. MOCQUOT for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

This is a suit by A. E. Cole to cancel a check for $10,000.00 executed by him payable to the order of the Board of Regents of the Murray state normal school on the 23rd of September, 1924, and also to cancel a contract awarded to him by that body on the same date for the construction of a female dormitory at Murray, Ky., at the price of $207,787.00.

It appears that prior to the letting, a copy of the plans and specifications, together with a written advertisement, had been sent to prospective bidders in ample time for them to prepare their estimate and submit sealed proposals to be received at the office of the president up to 10 a. m., September 23rd, and not later; that all bids must be on regular forms provided by the board; that no claims would be allowed on account of

mistakes or omissions in the bidding; that a certified check for $10,000.00 payable to the order of the board must accompany the proposal; that the check of the successful bidder would be retained until a written contract was signed and bond, executed by the bidder. It was also provided that the failure or refusal of any contractor to execute the written contract and bond according to the terms of the proposal after the contract was awarded him by the board would constitute grounds for the forfeiture of the check to the board.

At the appointed hour the board met and eight proposals were received and read in the presence of the bidders; Cole's bid being $31,000.00 under the next lowest bid. The board went into executive session and at 3 o'clock in the afternoon Cole was called in and asked if he had made any mistake in his bid and answered he had not and was willing to stand by his figures, whereupon he was awarded the contract and the board adjourned.

On his return to his home in Paducah about two or three hours later Cole discovered an error of approximately $22,000.00 in his proposal and at once notified an officer of the board and sought a correction. This proving fruitless he declined to execute the contract and bond and the board forfeited the check and advertised for a second letting. This was had and Cole was again the successful bidder, the second contract being awarded at the sum of $224,261.00. Written contract for this was executed and bond given and the work is progressing to the apparent satisfaction of all parties. The present contract calls for completion August 15, 1925, one month later than the date fixed by the first contract and the additional meeting of the board caused by the failure to execute the first contract entailed some expense.

This suit was filed October 23, 1924, the issues were made up by appropriate pleadings and the above facts developed. The chancellor found that he could put the parties in statu quo by requiring plaintiff to pay the actual damages sustained by defendant, which he found to be $200.00, and entered judgment against plaintiff for that sum and by his further judgment cancelled the contract and check mentioned. Defendant appeals.

The proposal submitted by Cole was for a lump sum, but in its preparation he had classified the different items of construction and had estimated the cost of each, had totalled these on a separate sheet of paper and added 8%

as his profit and submitted the total thus found; but in so doing he entirely omitted the item of cut stone which he had estimated to cost $21,066.00 not including any percentage for himself. It thus clearly appears that the omitted item is several thousand dollars in excess of his contemplated profits and if his estimates were correct the contract would have resulted in a loss to him of that amount. These facts being established, it follows that the mistake was not incidental but fundamental and a substantial part of the whole consideration of the contract. His intention was to submit a proposal on which he stood to earn 8% on the cost of the construction. He certainly did not intend to contract for an estimated loss of over $5,000.00, and it cannot be said that the minds of the parties met on the proposition. The appellant did not know of this, but the disparity of the bids attracted the attention of the members of the board, hence the inquiry if he had made any mistake and his assurance he had not, he still being unaware of the omission.

While there is a diversity of opinion in the courts of last resort as to whether a court of equity will give relief in cases of this character the weight of authority is to the effect that an executory contract may be cancelled if it was entered into through mistake of one of the parties, if the mistake is of the substance of the whole consideration, is not due to culpable negligence and the parties may be placed *in statu quo*.

The general principle is thus stated in 13 C. J., page 373:

> "Mistake of one of the parties only in the expression of his agreement or as to the subject matter, not known to the other, does not affect its binding force and is no ground for its recission even in equity, unless it is such a mistake as to show that there is a complete difference in substance between what is supposed to be and what is taken, so as to constitute an absence of consideration. The principle of our law is the same as that of the civil law and the difficulty in either case is to determine whether the mistake or misapprehension is as to the substance of the whole consideration, going as it were to the root of the matter or only to some point, even though a material point, an error as to which does not affect the substance of the whole consideration."

In Story's Equity Jurisprudence, section 1381, the rule is thus stated:

> "But where the mistake is of so fundamental a character that the minds of the parties have never in fact met or where an unconscionable advantage has been gained by mere mistake or misappropriation and there was no gross negligence on the part of plaintiff, either in falling into the error or not sooner making redress and no intervening rights having accrued and the parties may still be placed *in statu quo,* equity will interfere in its discretion to prefent intolerable injustice."

In Hearne v. New England Mutual M. Ins. Co., 20 Wall. 488, it is said:

> "A mistake on one side may be a ground for rescinding, but not for reforming a contract. Where the minds of the parties have not met there is no contract, and hence none to be rectified."

School Comrs. v. Bender, 72 N. E. 154, is analogous to this case. Bender was awarded a contract for the erection of a school building in Indianapolis at a cost of about $15,000.00. In making his proposal he had inadvertently turned two pages of his estimate book and the items appearing therein amounting to $4,000.00 were not included in his proposal. It appears that he had but a brief time in which to prepare the estimate and it was hurriedly made and some emphasis was placed on that fact. Relief was granted, the court saying:

> "It is clear that appellee's bid was not what he intended it to be, in other words he did not intend to submit a bid by which he agreed to do work for the amount designated. Under the facts appellee never entered into a contract by which he was to do the work for the fixed compensation. By the fair terms under which the bid was submitted it was contemplated that if appellee's bid was accepted the contract between the parties was to be entered into. By advertising for bids and by appellee's submission of the bid and acceptance of it by appellant it might properly be said that a tentative or preliminary contract was made, but it was not the contract contemplated by the parties. If there was not an *aggregatio mentii* then there was no binding obliga-

tion. Certain it is that appellee had no intention to submit a bid for acceptance by which he was to furnish the material and do the work for $4,000.00 less than the estimate he made.''

A case directly in point is St. Nicholas Church v. Kropp, L. R. A. 1917D 742. There the bidders for the construction of a church each deposited a certified check for $1,000.00 to insure the execution of a written contract by the successful bidder. Kropp's bid was $30,973.00, $3,900.00 lower than his nearest competitor and he was awarded the contract. On his return home he discovered that by oversight he had failed to include an item of $2,350.00 for structural iron. The written contract had not been executed and on the following day he notified the committee of the mistake, and that he could not enter into the contract unless paid $2,000.00 over his bid. The committee declined to do this and a few days later, awarded the contract to a belated bidder at $32,775.00. The committee claimed the check and suit resulted. Issues were submitted to a jury which found, (1) the building committee awarded the contract to Kropp on the day the bids were opened, (2) that Kropp made an honest mistake in his bid without being negligent, and (3) that the building committee had no knowledge of Kropp's mistake when it accepted its bid.

The equitable issue was discussed and the authorities distinguished so clearly in that opinion that we quote freely therefrom, as follows:

''The question here is whether a mistake of over $2,000.00 in the bid upon the construction of this church is merely incidental or fundamental. We think the amount is so large that it is unreasonable to suppose that Kropp would have made the bid he did make, if he had known that the structural iron work was not included therein. Here the finding is that it was an honest mistake, made without negligence. Plaintiff was apprised of the error at once. No intervening rights accrued. The belated bid which plaintiff accepted was a trifle less than the one Kropp intended to make. There can be no question of not placing plaintiff *in statu quo*. It did nothing in reliance upon Kropp's bid, and did not change its position in the least between the time it notified him of the acceptance and the time it received notice of his mistake. . . . The bid was

at most but a step in the making of the contract. It was well understood that before Kropp would be permitted to begin the erection of the building he must execute a formal contract and give adequate bond. The contract was, therefore, wholly executory. This case upon its facts is not distinguishable from Moffett, H. & Co. v. Rochester, 178 U. S. 373, except that there notice of the error was given when the bids were opened; but that can be of no consequence, since under the statute there applicable the bid could not be withdrawn after being submitted. The court rescinded the accepted proposal to construct certain municipal improvements. This power of a court of equity to rescind or cancel a contract entered into while one party labored under a mistake as to a fact of impelling importance to him in entering it is recognized in Brown v. Lamphear, 35 Vt. 252. And in speaking of the case of Diman v. Providence, W. & B. R. Co., 5 R. I. 130, the court in Fehlberg v. Cozine, 16 R. I. 162, says; 'This case recognizes another rule of equity, that where there has been a material mistake upon one side the court may rescind and cancel the agreement, where it can do so without injustice to the other party. There are two principal classes of cases in which this power of the court is exercised. One includes cases of executory contracts and the like where the parties can be put *in statu quo*. In these cases the parties have not in reality agreed; their minds have not met; and if one, without fault on his part, had bound himself to something materially different from what he supposed it to be, which can be annulled without loss or injustice to the other side, it is deemed . . . inequitable to enforce it.''

''In Scott v Hall. 58 N. J. Eq. 42, where the vendor in a conditional sale contract agreed to transfer the chattels to the one in possession for $525.00 on the mistaken supposition that there was $650.00 due on the contract, instead of $950.00, and the check for $525.00 was already in the hands of the vendor's agent when the mistake was discovered, the court rescinded the bargain, Vice Chancellor Pitney saying: 'Now it seems to be plain enough that, having agreed upon a sum based on $650.00 being due, when there was in fact $950.00 due, this court ought

to relieve him from a contract made upon such mistaken basis, unless, before notice, the other party has so acted upon it as that it would be unjust to him to be compelled to submit to rescission. Now in this case notice was given immediately to defendant's counsel and while the affair was unfinished and not concluded in the manner in which the parties intended to conclude it; for it was their intention that there should be a written transfer of the title.' "

So here there was to be a formal contract executed. That a mistake by one party as to price is material and ground for holding that the minds of the parties did not meet, see Rowland v. New York, N. H. & N. R. Co., 61 Conn. 103, 29 A. S. R. 175; DeVoin v. DeVoin, 76 Wis. 66, and Webster v. Cecil, 30 Beav. 62.

Steinmeyer v. Schroeppel, 226 Ill. 9, is really not in favor of plaintiff on the findings here made; for it was there held that the error in the computation occurred through the negligence of the party who asserted the mistake. Moreover, it is clear that in a case of that kind where the lumber, the subject of the contract, had been used it was impossible to place the parties *in statu quo*. However, the court therein recognized the existence of the rule we hold applicable to the facts in the case at bar. We think also where the parties have entered to such an extent upon a performance of their contract that it becomes difficult to restore them to their former position, recission will not be decreed. To this class belongs Tatum v. Coast Lumber Co., 16 Idaho 471, and other authorities cited in the annotation to that case in 23 L. R. A. (N. S.) 1109. Such also is the rule where a bid has been acted upon so that cancellation would be unjust or inequitable to the party having accepted it without knowledge of the other party's mistake. C. H. Young Co. v. Springer, 113 Minn. 382. The case of Crilly v. Board of Education, 54 Ill. App. 371, is very similar to the instant case, except there it was found that the mistake was due to the negligence of the party making the mistake, while here the finding is to the contrary, and that very fact brings the case within the operation of the rule. So far as we are aware the only decision upon facts as here found, supporting plaintiff's position is Brown v. Levy, 29 Tex. Civ. App. 389, but therein no reference is made to the well established equitable principle of permitting relief from unilateral mistakes, and we are not inclined to follow its lead."

The above authorities are convincing as to the soundness of the rule and as to its proper application, though we think the court should be cautious in its exercise and apply it only when established by convincing evidence. Here there is no doubt that appellee made an honest mistake in his bid, and it does not appear that he was guilty of culpable negligence. It was such an error as any business man might. make. It was discovered before any action was taken under the contract. No other rights had intervened. The second contract was awarded at a lower figure that that of appellee's nearest competitor in the first bidding, and at a less figure than his first estimate including cut stone. It does not appear that any actual injury will result by a month's delay in the completion of the building. The only way in which appellant has been prejudiced is in the cost incident to the second letting. Upon payment of this by appellee the parties may be placed *in statu quo* and all the conditions of the rule for the cancellation of the instrument fairly met. This having been done. by the chancellor the judgment is affirmed.