## Chism et al. v. Chism et al.

Dec. 3, 1943.

M. C. Redwine and Herbert H. Moore for appellants.

J. Smith Hays, Jr. and Harvey T. Lisle for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

W. M. Chism died intestate at the age of eighty-three years, leaving surviving him as his only heirs at law two sons and two daughters, and three grandchildren, the descendants of a deceased daughter. His estate consisted of approximately $5,000 in cash and a small farm. On September 8, 1941, Albert Chism, one of the sons, and his two sisters, together with their respective husbands, all of whom are appellants herein, instituted an action against the other son, John T. Chism, with whom the decedent had resided, the three grandchildren and their spouses, and the administrator

of W. M. Chism, all of whom are named as appellees,. alleging that there were no debts owing by the estate,. and seeking to compel the administrator to settle his. accounts. Two days later the appellants instituted an. action against the appellees, other than the administrator to obtain a sale of the real estate and a division of the-proceeds. Amended and intervening petitions were filed seeking to recover certain small sums, aggregating $319.45, alleged to have been loaned by Albert Chism to his father, and to charge John T. Chism with an advancement of $1,125 arising out of a purchase, as he claims, of an undivided one-half interest in real estate from his father. In the first of the two actions an answer and counterclaim was filed, in which it was sought to charge Albert Chism with advancements aggregating $1,800, and to consolidate the actions so that, to the extent necessary, the proceeds of the sale of the real estate might be taken into account in effecting a proper distribution. The actions were consolidated over the protest of the appellants, proof taken, and a decree entered dismissing the amended petition seeking to charge John T. Chism with an advancement, but charging Albert Chism with advancements aggregating $1,800, and disallowing $160, one of the items of his claim for money loaned his father.

We have made no attempt to state the exact order in which the supplementary pleadings above referred to were filed. Neither do we deem it necessary to pass upon the technical correctness of the Chancellor's rulings designed to facilitate an orderly disposition of the various issues presented. Moreover, in order to confine the length of this opinion within reasonable bounds, we shall dispose of the contentions that John T. Chism should have been charged with an advancement, and that Albert Chism should have been allowed all of the items of his claim for money loaned, with the statement that neither was supported by sufficient proof to justify a different conclusion than that reached by the Chancellor. In fact, the claim that John T. Chism should have been charged with an advancement is not seriously urged on this appeal, and the real controversy is regarding the advancement charged against Albert. This issue was brought into the proceedings by the answer and counterclaim above referred to, and was based upon a writing executed by W. M. Chism on March 14, 1937, reading as follows:

"Memorandum made by W. M. Chism to be used in a settlement of my estate.

"On April 22, 1927, I loaned to Albert Chism the sum of One Thousand Dollars ($1000.00), on which he has paid the sum of One Hundred Dollars ($100.00).

"In 1929 I loaned Albert Chism the sum of Three Hundred Dollars ($300.00).

"In 1929, I loaned Albert Chism the sum of Six Hundred Dollars ($600.00).

"I do not hold any notes against Albert Chism, but I want him charged with the above amounts in the settlement of my estate.

"In 1929, I bought two mules for Eddie Dawson and paid Fifty Dollars ($50.00) for one of the mules, and ninety Dollars ($90.00) for the other mule. Eddie Dawson has not paid me either of these amounts.

"Vernal Dawson owes me the sum of Thirty-five Dollars.

"Virgil Dawson owes me the sum of One Hundred and Fifty Dollars ($150.00).

"I make this memorandum for definiteness in the settlement of my estate, and any amount owing to me by any of the parties herein named who are heirs of my estate, shall be charged to such of the above named persons as may be owing me.

"Witness my signature, this the 4th day of March, 1937.

"W. M. Chism

"Witnesses:
  "Harvey T. Lisle
  "J. T. Chism"

The proof introduced by appellees clearly indicates that any money which Albert obtained from his father, with the possible exception of the $600 item referred to, was loaned to him with the understanding that it was to be repaid during the loaner's lifetime. Consisting of declarations by the decedent not made in the presence of Albert, it was clearly incompetent, as, likewise, was the written statement itself. Gish v. Nolen et al., Ky. 47 S. W. 757; Cochran et al. v. Simmons et al., 211 Ky. 16, 276 S. W. 989. Aside from the statement of Albert

Chism hereinafter referred to, the proof concerning the $600 item consisted of the testimony of H. H. Moore and Marcus C. Redwine, attorneys, that they had each been paid $200 by the decedent to defend Albert who had been indicted for striking a Mr. Fox with a deadly weapon. Mr. Moore stated that the decedent said "he would do it just as gladly for any one of his children just as quickly as he would take a drink of water," and that "it would be a poor daddy who didn't help his children." Mr. Redwine testified that the fine imposed upon Albert was $100 and costs amounting to $68.93, and that Albert gave him a check for the amount of the fine and costs. Albert Chism denied that his father had ever loaned him any money, and asked if his father had ever paid any money at his request, answered, "Not at my request, if he did he just gave it to me." Asked specifically concerning the fees of Messrs. Redwine and Moore, he stated: "He told me, 'I am just going to pay this off, I will pay that.'"

Appellees excepted to the last quoted statements of Albert, but not to the others. Neither did they except to the foregoing testimony of Messrs. Moore and Redwine. On the other hand, appellants did not except to the testimony concerning the declarations of the decedent made to third parties in Albert's absence, but did except to the testimony of the appellees relating to other transactions with the decedent. If we should treat all of the testimony as competent, as did the Circuit Court, the net result would be that Albert was indebted to his father's estate in an indeterminate amount. If the testimony which was incompetent should be disregarded, not even an indebtedness could be held to have been established. Surely, a father may voluntarily aid a son in trouble by paying his attorney's fees or giving him a small sum of money without creating either a debt or an advancement. At least, such payments could hardly be regarded as within the statute which requires that gifts by a parent or grandparent to a descendant shall be charged as advancements, but which expressly provides: "The maintaining or educating or the giving of money, to a child or grandchild, without any view to a portion or settlement in life, shall not be deemed an advancement." KRS 391.140 (KS sec. 1407).

As to the other items going to make up the $1,800, the record leaves no doubt that if and when they were expended by the decedent, they were loaned rather than given to Albert Chism. Even if the decedent's written

declaration made several years later had characterized the payments as advancements or gifts instead of loans, and could be considered competent, appellees' position would not have been bettered. As said in Bailey's Adm'rs v. Barclay et al., 109 Ky. 636, 639, 60 S. W. 377, 378: "The question whether the gift of a father to a child was an absolute one, or made by way of advancements, was a question of the intention before the enactment of what is now section 1407 of the Kentucky Statutes. That section of the statutes made any gift of real or personal property or money by a parent or grandparent to a decendant an advancement, which should be estimated according to the value of the property when given, unless it appeared that the gift was without any view to a settlement in life, or for purposes of maintenance and education. In passing upon the competency of declarations made by an ancestor as to the intention with which the gift was made, it was generally held that declarations of the donor prior to the transfer or contemporaneous with it were competent, but that subsequent declarations are inadmissible, unless a part of the res gestae, or against the interest of the donor. See 1 Am. & Eng. Enc. Law (2d Ed.) p. 776; Gillett, Ind. & Col. Ev. sec. 155. Under this rule, we are of the opinion that the evidence of declarations made by intestate is not sufficient to charge appellants Sam and Dock Bailey with advancements; and it follows that the court erred in charging these appellants $300 by way of advancements, * * *.''

See also Isgrigg et al. v. Isgrigg, 179 Ky. 260, 200 S. W. 478.

The distinction between the gift which is and the one which is not chargeable as an advancement is well stated in Brewer's Adm'r v. Brewer, 181 Ky. 400, 205 S. W. 393, 396: "It is true that in one important particular the evidence necessary to establish a gift and an advancement must be substantially the same; that is to say, in each case, it must be made to appear that there was an irrevocable gift of the money or property by the donor to the donee with the intention upon the part of the donor of terminating all right of control or dominion over the thing given. But an 'advancement' is a gift made with the intention that it shall be charged to the donee in the distribution of the donor's estate. In other words, it is the gift in anticipation of what the donee would receive upon the death of the donor who advances to the donee a part of that, or perhaps all of that, as the

case may be, that he would receive from the donor at his death, if he died intestate with the intention that the donee shall later account for when he comes to get his inheritable share of the donor's estate. When, however, an ordinary 'gift' is made, there is no expectation or purpose on the part of the donor that the donee will at any time or in any way be expected to account for it, and this is the distinguishing feature between a gift and a statutory advancement.''

The burden of proving gifts of money by the father to his son, Albert Chism, was upon the appellees, and if they had met this burden, the burden of proof would have shifted to the appellants to show that they were ordinary gifts, not within the category of advancements. But the appellees did not meet the burden upon them, even assuming the competency of the testimony introduced by them, by merely proving that the father had loaned the son money, which, as the evidence indicated, was to be repaid during the lifetime of the father. Seemingly, the appellants, though not required to do so, assumed and sustained the burden of proving that if the money embraced within the $600 item was a gift, it was an ordinary one exempted from the operation of the statute cited.

We do not mean to hold that if appellees by proper pleadings allege and prove that Albert Chism is indebted to his father's estate for money expressly or impliedly loaned, they may not offset such indebtedness against his distributable share of the estate. We merely hold that the pleadings and proof now in the record do not support the Chancellor's decision that Albert Chism should be charged with any sum as an advancement.

Judgment reversed for proceedings consistent with this opinion.